SAMUEL P. HODGEN, Appellant, *v.* ROBERT B. LATHAM, Appellee.

APPEAL FROM LOGAN.

In the course of business, A gave to B a draft, which was not paid on presentation. Afterwards, B sued A, and recovered judgment, which included the amount of the draft as well as other indebtedness, the draft not having been surrendered. *Held*, that the draft should have been produced and cancelled on the trial, or the amount deducted from the verdict.

Hodgen v. Latham.

THIS was an action of assumpsit by appellee against appellant, in the Logan Circuit Court, upon the common counts for corn, sold and delivered by appellee to appellant.

The defendant filed pleas of the general issue, and payment of part and tender of the balance, upon which there was issue. Trial by jury, and verdict for $1,118.10, and judgment.

The defendant took a bill of exceptions on the trial, from which it appears that the plaintiff below, to maintain his case, called *Wm. F. Ryan*, who swore that he had bought a lot of corn of John Wyatt and the plaintiff, and had made a payment on the same of a small amount (amount paid not stated) ; that afterwards, being unable to pay the balance due, he endeavored to procure some one to take his corn off his hands. He wanted to get out of it ; and finally, the defendant (Hodgen) agreed to take it at the price he had contracted to pay ; that witness and defendant (Hodgen) went to the plaintiff, and it was agreed between them that the plaintiff (Latham) would let the defendant have the corn at the price agreed upon between the other parties (witness and Wyatt and Latham), some at twenty-two and one-half cents per bushel, and some at twenty cents per bushel ; that he did not recollect the number of bushels at each price, but a calculation was made, and the whole amounted to eleven hundred and twenty-eight dollars and ten cents; that defendant (Hodgen) agreed to pay plaintiff (Latham) that amount that day, and plaintiff agreed to deliver the corn to defendant, and the corn was delivered ; that the money was not paid that day ; that Mr. Lacy had a claim on the plaintiff, and the plaintiff wanted to ascertain the amount, and left for the purpose of seeing him, and returned soon, saying that Lacy was not in his office and he would see him in the morning. Witness further testified, that the corn, up to the time of the sale to the defendant, was in the possession of Latham in his warehouse, and was to remain in his possession until the witness paid him for it. The sale to the defendant was about the 12th or 13th of May, 1861.

On cross-examination, the witness said he had bought the

corn of John Wyatt; that plaintiff had an interest in it; that the corn was under the control of witness; that Latham settled for the storage of the corn, and witness afterwards settled with him for the storage; that at the time the contract was made with defendant, defendant (Hodgen) told plaintiff, that he would pay him one thousand dollars that evening; plaintiff said he wanted to see Lacy and ascertain the amount of a claim for collection in his hands against plaintiff, and ascertain what amount he had to pay him, when he went off and returned, as stated in examination in chief. On being recalled, witness said he still held the written contract he had made with Latham and Wyatt, and it was not given up.

*Solomon Rothchild* testified, that sometime last summer he met the defendant on the side-walk in Lincoln, and had a conversation with him about currency, etc., in the course of which defendant said he had bought a large lot of corn of the plaintiff; that he had deposited, or was to deposit, money at the bank with Dustin & Music—could not say which; that plaintiff (Latham) would not take the money, and he expected to have trouble about it.

*William M. Dustin* testified, that he was a member of the firm of Dustin & Music, who were bankers, doing business in the town of Lincoln, Illinois; that defendant had not deposited money with them for the plaintiff.

On cross-examination, witness testified, that plaintiff and defendant came together, or were together, at the banking house of Dustin & Music, in Lincoln, on the 16th day of May, 1861; that while there, the defendant drew two checks on said firm of Dustin & Music. One of the checks was in favor of the plaintiff (Latham) for three hundred and thirty-eight dollars; and the other was for enough, when added to the first check, to make one thousand dollars. The check for the smaller amount was payable to the order of the plaintiff (Latham); that Dustin & Music took in said checks, and then drew a draft on their banking house in Chicago (Hoffman & Gelpcke) payable to the order of the plaintiff (Latham), for the sum of three hundred and thirty-eight dollars. Plaintiff (Latham) then indorsed his name on the draft, and handed it

to defendant, to give to Mr. Lacy, to take up a draft which Lacy held, drawn by defendant for the same amount. The plaintiff said he wanted to use some money in Springfield, and if such money for the balance of the thousand dollars, as he could use in Springfield to pay a Mr. Ridgley could be got, he would take it. The defendant requested Dustin & Music to get the balance of the thousand dollars and send it to Mr. Ridgley for plaintiff, and witness accordingly went to Chicago that night to procure such money for defendant as could be used by Latham (plaintiff,) and when he got there he ascertained that he could not get such money as would pass in Springfield, and he did not get any, and nothing more was done. Witness further testified, that he knew defendant (Hodgen) had deposited one thousand dollars at the banking house of Hoffman & Gelpcke, to the credit of Dustin & Music, for plaintiff. Dustin & Music did not authorize the deposit; that the only money they could have drawn from Hoffman & Gelpcke would have been at a discount of from twenty-five to forty per cent.

  *L. P. Lacy*, a witness for plaintiff (Latham), swore that he called on Latham with a claim of $348, which he held for collection against Wyatt & Latham in favor of a firm in Chicago. Latham and witness went to the store of the defendant (Hodgen) in Lincoln, to get the money for said claim from him. There a conversation took place between plaintiff and defendant about the corn transaction, and the amount talked of was $1,000, or about that sum. Defendant told plaintiff (Latham) that he had deposited the amount spoken of in Chicago, to the order of Dustin & Music. Latham refused to take the money there, and told Hodgen that he (Hodgen) was to have deposited the money for him with Dustin & Music, which Hodgen did not deny, but said he had deposited it at Chicago because he did not want the money to pass through his hands. Latham then said he would take the amount of the claim witness had for collection in Chicago, if witness would take it on said claim, and witness agreed to do so, on condition that it would be good in Chicago. Hodgen then drew a draft on some firm in Chicago, believed to be Hoffman

& Gelpcke, in favor of Latham, and Latham indorsed the same and delivered it to witness, for about $338, and Hodgen paid witness ten dollars, making the full amount of the claim held by witness against Wyatt and Latham. Hodgen and Latham then started to the bank of Dustin & Music, to arrange the balance of the $1,000. Witness went to his office, and shortly after, Hodgen came to him with another for the same amount, drawn by Dustin & Music, in favor of said Latham, and drawn on Hoffman & Gelpcke, Chicago, dated May 16, 1861, and said he wanted witness to take it in place of the first draft; that as the money had been deposited to the credit of Dustin & Music, he was afraid the money could not be drawn on the first draft, and witness took the said draft and gave up the first. Witness sent the draft to Wm. Blair, of Chicago, in whose favor the claim was, on Wyatt and Latham, and a few days thereafter it was returned to witness protested, and has not since been paid, and is still in his possession.

The plaintiff having closed his testimony, the defendant recalled the witness Dustin, who further testified, that at the time the defendant drew the two checks, amounting to one thousand dollars, as before stated by him, Dustin & Music on their banking books gave defendant credit by one thousand dollars, and charged him with the two drafts drawn by defendant. Defendant's counsel then asked witness, whether the defendant had made any arrangement with Dustin & Music to deposit money to their credit with Hoffman & Gelpcke, in Chicago; to which plaintiff's counsel objected, and the court sustained the objection, and refused to permit the question to be answered; to which defendant excepted. On cross-examination, witness said that Dustin & Music had not paid plaintiff any money on the checks drawn on them by defendant, and they did not give plaintiff credit by the amount of said checks on their books; it was all for the accommodation of defendant.

The defendant asked several instructions to the jury which were refused, among which were the following:

2. That if the jury believe, from the evidence, that the

defendant, in May, 1861, after the sale of the corn mentioned by the witness Ryan, gave to the plaintiff a check on Dustin & Music, and they took it up, then the jury ought to allow defendant a credit of one thousand dollars in making up their verdict in this case, if they shall find that the corn sold to defendant was the property of the plaintiff at the time of the sale of the same to defendant. But if they should believe, from the evidence, that the said corn was not, at the time of the sale thereof to defendant, the property of the plaintiff, then they ought to find for the defendant, except as to the sum of one hundred and twenty-eight dollars and ten cents.

The court refusing the above and other instructions asked for by defendant, in place thereof gave the following, to which the defendant excepted:

1. Unless the jury believe, from the evidence, that the plaintiff sold the corn in controversy to the defendant, they will find a verdict for defendant.

2. If the jury believe, from the evidence, that the plaintiff sold the corn in controversy to the defendant, and if they further believe, from the evidence, that the defendant has paid the plaintiff the sum of one thousand dollars, or any less sum, they will allow the defendant a credit of the amount they find to have been paid.

3. If the jury believe, from the evidence, that the defendant bought the corn in controversy from the plaintiff, and that the same was delivered to him by the plaintiff, and that said defendant has not paid said plaintiff for said corn, or any part thereof, they will find a verdict for the plaintiff for the amount found due by the evidence.

The jury found a verdict for $1,118.10.

Defendant moved the court for a new trial, for the following reasons:

Because the verdict of the jury was against the evidence.

Because the court had refused proper evidence to go to the jury, and had erred in refusing and giving instructions.

Because the verdict was against law and evidence.

The court overruled the motion for a new trial, and gave

judgment on the verdict; to which defendant excepted, and prayed an appeal.

Said appellant now assigns for error:

That the court erred in its instructions to the jury.

That the verdict being contrary to the law and evidence, the court erred in refusing a new trial, and in rendering judgment on the verdict.

HAY & CULLOM, for Appellant.

I. The evidence shows that the corn in question originally belonged to John Wyatt and Latham (the plaintiff below); that they sold it to one John Ryan; that this sale was rescinded, and immediately upon this rescission of the first sale, the corn was sold by Latham to Hodgen; and Latham brings suit against Hodgen for the value of the corn.

The right of action on all parol contracts must follow the right of property. On the rescission of the contract with Ryan, the corn was again the joint property of Wyatt and Latham; and although Latham, as joint owner or as partner with Wyatt in the corn, may have had the right to sell the corn, yet the action for the value or proceeds should have been a joint action—Latham could not alone sue for it. And this objection was available under non-assumpsit. 1 Chitty, p. 14; Saunders' Pl. & Ev., part 1, vol. 2, p. 536.

II. The evidence shows that Hodgen had deposited with a banking house in Chicago, one thousand dollars, to the credit of Dustin & Music (a banking firm in Lincoln), which he sought to make available in paying Latham for the corn; that Dustin & Music, on being informed of this deposit, credited Hodgen with that amount on their books, thereby making the Chicago deposit their own funds; and that Latham, desiring to make a payment of $338 in Chicago, to a creditor there, it was arranged between him and Hodgen, that Hodgen, in part payment of the corn, should give a check, payable to the order of Latham, for that sum, on Dustin & Music, which was done. This check was presented by Latham to Dustin & Music, who took in the same, charging Hodgen with its amount, and paid the same to Latham

by giving him a draft for the same amount, on the Chicago bankers referred to. This draft was indorsed by Latham and put into circulation, and although the evidence shows that it was presented to the drawees, and payment refused, yet it was for no want of funds. Thereupon, without notice of its dishonor, to any of the parties, without offering to return the draft or check for which it was given, or taking it up and producing it upon the trial, the plaintiff (Latham) institutes his suit for the whole value of the corn, and recovers for the whole value.

By the verdict, Hodgen is twice charged to the extent of this draft, and he is left without further remedy. The draft being outstanding, and Dustin & Music being liable as drawers thereon, this liability is a sufficient consideration for their charge of the amount against Hodgen.

Latham having accepted and negotiated the draft for $338, and the same being yet outstanding, and in the hands of a third person at the time of the trial, although originally it might have been treated as payment only *sub modo*, yet by these facts it has become absolute payment, and to that extent he cannot recover upon the original consideration. Edwards on Bills and Notes, 196, 197, 552, 553; *Miller* v. *Lumsden et al.*, 16 Ill. 161.

Whether the laches, in failing to take up the draft and give due notice of its non-payment, would or would not wholly discharge the drawers (Dustin & Music), and Hodgen, upon whose check it was drawn, it is nevertheless undoubtedly the law, that before a recovery could be had against Hodgen, on the original consideration for the amount of the draft, that it should have been taken up by Latham, and returned, or offered to be returned, upon the trial. It was at least payment *sub modo*. Edwards on Bills and Notes, 196, 197; *Miller* v. *Lumsden et al.*, 16 Ill. 161; *Holmes* v. *Decamp*, 1 Johns. 34; *Raymond* v. *Merchant*, 3 Cow. 147; *Dangerfield* v. *Wilby*, 4 Esp. 159 ; *Bundon* v. *Holton*, 4 Bing. 454; *Hamden* v. *Mendisabel*, 2 Carr. & Payne, 20 ; *Dayton* v. *Trull*, 23 Wend. 345 ; *Torry* v. *Baxter*, 13 Vt. 452.

JAMES C. CONKLING, for Appellee.

Record does not show that Wyatt had any interest in the corn as owner.

Record does not show that Wyatt and Latham are partners.

But admitting they were partners, yet if the contract was made with the plaintiff alone, he claiming the property as his individual property, the suit can be maintained by him alone. 1 Chitty on Pleadings, 13; 1 Maule & Selwyn, 250.

Defendant is estopped by his pleadings from objecting that Wyatt should have been made a party plaintiff—

1st, Because he has pleaded a tender to Latham alone. 1 Greenleaf on Evidence, secs. 27, 205.

2nd, Because he has pleaded a set-off against Latham alone.

3rd, By his numerous acts and admissions *in pais*.

Appellee, in reply to appellant's second point, says, that the draft on Chicago was made at request of Hodgen, by Dustin & Music, and for his accommodation. That he personally delivered the draft to Lacy, and thereby made Lacy his agent for his own benefit, and that when the draft was returned protested from Chicago to Lacy, he (Lacy) still held it as agent for Hodgen.

But if Lacy does not hold it as agent for Hodgen, he is not a *bona fide* holder, for he got it from Hodgen with the distinct understanding that it would be good in Chicago, and as it was not used there, he was bound to return it to Hodgen from whom he got it. He could not compel Dustin & Music to pay the draft. 16 Ill. 161.

The draft having been drawn by Dustin & Music, and Hodgen not being a party to the draft, he has no right to object that there was no notice of dishonor. The object of giving notice is to enable the drawer to withdraw his funds in hands of drawee, but as Hodgen has no funds in his own name at Chicago, he was not entitled to notice.

But if he could object, it was proved that the draft was protested, and it is to be presumed that the officer making the protest did his duty, and gave notice of the dishonor of the draft to the proper parties.

If Hodgen wanted to rebut this presumption, he had the opportunity of doing so by examining Dustin on that point, he being a witness.

CATON, C. J.  We see no objection to the right of the plaintiff to maintain the action in his name alone.  But the important question which affects the merits of this case is, was the plaintiff on the trial bound to produce and deliver up, to be cancelled, the draft for three hundred and thirty-eight dollars, which he had given to Lacy, or rather which Hodgen gave to Lacy in substitution for the one which Latham had given him, or else have that sum deducted from the amount otherwise due him for the corn ?  The draft was drawn against the amount due the plaintiff for the corn, with the sanction and direction of the plaintiff beyond all question, and if it had been paid, the proceeds would have been applied for the benefit of Latham, and in that event no question would have been made on this trial that the defendant should have had credit for that amount.  Is the case any different now ?  That draft was given to Lacy for the benefit of Blair, Latham's creditor.  Upon the delivery of it to Lacy, the title to it vested in Blair, and that title could only be divested by his own voluntary act of returning it.  The non-payment and protest did not divest his title.  He had a right to retain it and sue the parties to it for the amount due upon it, and he has retained it no doubt for that purpose,—at least such is the legal presumption.  Suppose the drawers pay voluntarily, or on compulsion, that draft ; that would make them Hodgen's creditors to that amount, and that sum would be applied to the benefit of Latham in payment of his debt to Blair, and thus, if this judgment is allowed to stand, he will get the benefit of that amount twice.  As between Latham and the other parties concerned in the transaction, and Blair, the latter is a *bona fide* holder of the draft.  We have no doubt the draft should have been produced and cancelled on the trial, or the amount deducted from the verdict.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*